case, which is styled a tandem case by our clerk's office, and that's McPherson against Keyser. Good afternoon, your honors. My name is Jameisa Drake, and I'm here this afternoon representing Franklin McPherson. We know from Feingold that the depraved indifference standard is a culpable mental state, and that it is inapplicable except in the narrowest band of cases. We know that this culpable mental state requires proof of something other than extremely reckless conduct, and this includes the extremely reckless behavior of drunk driving the wrong way on a busy thoroughfare. And we know that because those were the facts in Valencia, in Prindle, and in Maldonado, and in each of those cases the defendants were acquitted as a matter of law on insufficiency grounds. The McPherson case, the facts of our case, cannot be reconciled with the decisions in those defendants were trying to swerve out of the way to avoid hitting vehicles. And here, obviously, your client, the evidence was, drove for five miles with no indication of any effort to avoid multiple cars, including a truck sounding his air horn. So that's a big distinction, right? I don't believe so, your honor, and I think this... Before you answer that, let me just say, it's Valencia. Valencia, there was a non-jury trial. The trial court found that the defendant's intoxication rendered him oblivious to what he was doing. So the Court of Appeals in New York said, in light of that finding, then you can't say he realized it and disregarded it. So that was a very particular factual finding by a judge in a bench trial, which obviously, in this case, the jury made that determination. Well, if I could unpack that, there's several layers to that. Interestingly, what we have in the Court of Appeals in this case is the court saying sensibly the opposite, that McPherson was emboldened by alcohol and therefore appreciated the risk of what he was doing, which is not the way we think of intoxication, particularly extreme intoxication, which is what was at issue here, impacting a defendant's ability to form a mental state, particularly a mental state as specific as the one required under these statutes. As to the swerving, our contention is that that establishes the actus reus element of the offense. That establishes the extreme reckless driving, and we stipulate to that, obviously, that's what happened in this case. The deficiency that we identify has to do with the mens rea, and as I said at the outset, the lesson from Feingold, and in particular, the transition away from register to Feingold, is that something more than extreme reckless actus reus is required to establish these charges, and there's nothing on this record to establish the very particular thing required here, which is not only that he disregarded a risk, but he was depraved and indifferent to the lives of others when he was doing that. The thrust of the evidence in this case is entirely, and this bleeds through in the red brief, that if anything, if we can infer anything beyond a reasonable doubt from the facts, it's that Mr. McPherson was focused on himself and his troubles and whatever happened at the nightclub. Thirdly, to your honor's point about the jury verdict, of course, antecedent to every insufficiency of the evidence argument is a jury's finding of guilt, so our position is that this should have... Let me just see if I can parse it out for a moment, though. Obviously, but for the impact of intoxication, obviously, he's on the road for five miles, cars are coming at him, trucks blowing an air horn, it would be clear that he would have realized he was going the wrong way, right? For five miles, there's no debate that a jury could find, again, absent, we'll get to the intoxication, absent intoxication, obviously, that would be depraved, right? Absent intoxication... You're not swerving, you're just going straight down the road, you're not swerving, five miles, cars are passing you, it couldn't have been a mistake at that point, right? I understand, your honor, without some sort of physical impediment to a person's ability to... Exactly, so having the alcohol that was not, making him not able to perceive that for the jury to be irrational, and on that issue, again, they had similar expert testimony in this case to support that he would have been able to perceive that for five miles with those type of stimuli, and importantly, they had people saying that before he left the nightclub, he didn't seem intoxicated, he seemed like he could handle himself, this whole issue that I know you're aware of, him looking for something, not finding it, getting upset, firing a gun, realizing he can't stay if he fired a gun, so there's a lot of indicia that he was not oblivious when he got into that car, so again, the jury, it's not as if there's not evidence to support the jury's belief that the .19 was not sufficient to make him unable to realize for five miles with those stimuli that he was going the wrong way. I see my time is short, if I may answer the question. Sure. I also would like you to speak for a moment on the counsel issue. Yes, thank you. Even if we are to assume that he, that Mr. McPherson had the capacity to form a culpable mental state, in other words, if, and this I believe is the thrust of Judge Bianco, your question, that his intoxication did not so overcome his thought process or his ability to maneuver a car that he could not have formed a culpable mental state, that is not enough. The question is whether there is evidence in the record from which a jury could infer beyond a conviction, and as we set out at length in our papers, and because of the time I won't elaborate here, there is nothing. Even if the jury could infer that he had a reckless state of mind, the lesson from Register to Feingold is that that's not enough. He would have had to desire to create mayhem and disregard the lives of others, and there's nothing in the record to that is what he was thinking. To Judge Pooler's point, the thing that distinguishes perhaps this case from the last one is the fact that the sufficiency of the evidence argument was not preserved. We do have a standalone claim for ineffective assistance of counsel, which was fully adjudicated on the merits, and so the question for this court would be whether or not the Court of Appeals, applying the strictures of EDPA, unreasonably resolved that claim. Our position is that it did for two reasons. First, they misapplied the Strickland standard. The standard's not whether he would have won, but whether there is a reasonable probability of success. Of course, I emphasize the prejudice prong because the deficient performance prong has already been proven in Mr. McPherson's favor. The second way that ineffective assistance of counsel plays in here is that to the extent this court were to conclude that the claim is procedurally defaulted, the IAC excuses the procedural default, and in making that determination as we set out in the reply brief, in deciding whether IAC establishes cause and prejudice, this court is not confined by EDPA. It will review that question de novo, ultimately leading this court to the possible conclusion that if the claim is not procedurally barred and it was not addressed on the merits, then a de novo standard of review would apply and not 2254D. Thank you very much for indulging me in answering these questions past my time. Thank you for your excellent argument. We appreciate it. Are you in fact located in deepest Maine? I am, your honor. I'm in Auburn, Maine. Yes, well, that's wonderful. Thank you very much. We appreciate your appearance today and we'll hear from the DA's office. Me again, Judge. May it please the court. Together again. Yes, your honor. May it please the court. My name is Maureen McCormick and in this instance, I appear for the Nassau County DA's office and also for William Kaiser, who is the superintendent in the facility where Mr. McPherson is housed. Counsel for the petitioner jumped right into sufficiency arguments before having addressed the fact that the entire thing is barred. It's procedurally barred because there was an independent and adequate state rule under CPL 470.05 that is known as the contemporaneous objection rule. And since there was no contemporaneous objection about sufficiency, because there was no motion made to dismiss, the issue is not preserved for this court. I understand that counsel is attempting to mete out cause and prejudice, which she cannot do under these facts, which has been extensively reviewed and assessed by the appellate division second department, the court of appeals and the eastern district of New York and found to be that while the court of appeals said, for instance, that Mr. Lemke should have should have filed a motion to dismiss that there was no prejudice and indeed there is no prejudice because there can be no prejudice when there is a meritless claim that is not made. And in this instance, strategically, the defense attorney could have simply looked at this, recognizing that this is a case-by-case, very fact-specific issue and known that even if by some chance the trial court granted the motion to dismiss on that level, the people would have brought that case to the appellate division, delaying an eventual trial and the overturning of that dismissal. And how do we know they would have overturned it? Because they have, because they have upheld this conviction on this record under these facts, both in the appellate division and the court of appeals. The case has itself been, it is both procedurally barred, but the courts went to great lengths to decide these issues and the issue of ineffective assistance of counsel on the merits, which triggers the ADFA standard and 2254. The facts of this case cannot make out that standard. This defense attorney on that single issue of not objecting to the sufficiency of the evidence, again, it was meritless. So it cannot have been ineffective not to bring a meritless cause or a meritless motion. In this case, this defense attorney made strong arguments and conducted a very strong hearing. I the trial assistant in this case, the defense attorney gave a strong opening and closing and crossed the witnesses. I recall him making a very strong argument about the late disclosure of material regarding one of the witnesses to the point where I actually accused him of brandstanding. So this is not someone who just was dialing it in and did not consider the things that he was the evidence to some of the claims that were made. The narrowness, the uniqueness, the rarity of a drunk driver driving for multiple miles the wrong way is the kind of case that falls uniquely under a consideration on a fact-by-fact, case-by-case basis for depraved indifference to human life. And the cases that are cited, Valencia, where the judge who operated as the trier of fact made an announcement that he found as a fair-minded juror that the defendant in that case, based on that evidence, was too oblivious to have formed a mental state does not apply across the board to all cases and under all circumstances. The evidence in this case presents a rational juror, and there only has to be one rational juror who could find that there was depraved indifference in this case, that there was evidence that, like Hygen, there was a defendant who, this guy, is not a regular guy, as I indicated with Martin Hygen. He's a man who, prior to even getting in the car, was so angry after having drink in the club in Island Rock, that he couldn't find whatever he hid outside, that he went to his car, he found a gun, he fired the gun in a crowded parking lot outside of this took off and took off onto the Southern State Parkway at 70, 80 miles an hour for five miles the wrong way, again, ignoring the indicia, again, potentially emboldened, and the jury was, it was a reasonable inference for them to assume, or to infer rather, that from Dr. Classen's testimony, that he was emboldened, that he believed himself to be invulnerable to the effects of other things and situations, to his own reckless and depraved driving. This is a man whose depravity started before he ever got in the car. He demonstrated his mental state and it simply continued on. But as to the issue, as to whether or not the narrowness of this type of crime has been obviated by the creation of the aggravated vehicular homicide statute, there is a misunderstanding and a misstatement as to the intent of that statute. To be perfectly frank, your honors, I wrote the first draft of that bill and negotiated it with the legislature. It did not do what was claimed by the prior counsel. It did not say, the legislature did not wake up and say, oh, you see, we shouldn't have depraved indifference in drunk driving cases. Instead, it recognized that under the subjective mental state created by Feingold, there were a whole series of very egregious DWI cases where people who were extremely intoxicated, extremely reckless, but not depraved, were being treated at too low a standard. And the legislature, simply by enacting those bills, filled the hole between reckless manslaughter, a C felony, and depraved indifference murder, a rare, unique, and very uncommon charge in these circumstances with a B felony for those situations that it applies to. Secondly, I just also wanted to address this issue of the capacity to inform a mental state. Again, there's uncontroverted testimony from toxicologists, but I think it's important to note here that there is no indication from the friends, from the behavior, from his speaking, from his ability to drive the car, that this man was not aware of his surroundings and what he was doing. This man, who is unique to his own experience with that alcohol, this is not like the Kuhn case. The Kuhn case where they found that intoxication negated a mental state was based on was that the man who slashed his sister across the throat had become detached from reality. That's not this. There's no evidence of this. And in fact, in alcohol cases, that just doesn't occur unless they're in withdrawal and delirium tremors. So there is no break from reality. There is no prevention according to the uncontroverted testimony of the toxicologist and the ability to form this mental state. But specifically, judges, you shouldn't even be reaching these issues because the petitioner has not met the standard for doubly deferential review. My time's up. I'll rely on the papers. Thank you, Ms. Clark, very much. And Ms. Drake, if you have one minute or so. Yes, Your Honor, thank you very much. Oh, the sun came out just in time. I don't want to eat up your rebuttal time. I don't like to do that, but let me just ask a quick question in response to what Judge Poole asked you in your response. I want to make sure. I know there's a lot of back and forth what standard we should use on the cause and prejudice for the sufficiency argument. But if we were to use de novo review on the ineffective assistance of counsel claim and conclude that there was no reasonable probability that it would have prevailed, then certainly under any standard, then the sufficiency claims is defaulted, right? If we use de novo review on the ineffective assistance claim, which is the cause, then certainly it's procedurally defaulted, the sufficiency claim, right? If I understand Your Honor's question, you would have had to first conclude that there was a procedural default. And then the question would be whether IAC is causing prejudice in making that evaluation, you would apply a de novo standard of review. And if you concluded that under a de novo standard of review on the IAC as causing prejudice, I overcame the procedural bar, then de novo review would apply to the sufficiency claim. It is a convoluted, contorted process. I thought I could clarify that I wasn't successful, but go ahead. As we set out, most specifically in the reply brief, I believe under the U.S. Supreme Court case law has shifted on this, as has this court's own case law. I believe under prevailing law now, ambiguity as to whether a claim is resolved on the merits or on a state law ground, like the Contemporary Annihilation Rejection Rule is to be resolved in favor of the presumption it was resolved on the merits. Secondly, and with regard to IAC, and in response to my sister's argument about what a paragon of excellent representation trial counsel was, we already have a determination by the Court of Appeals that that lawyer should have moved to dismiss the charge. In other words, the deficient performance prong is already satisfied. We are halfway there. Next, with regard to the notion that this is an extremely rare thing for someone to drive the wrong way, or for someone to drive so recklessly, or for this extreme driving to result in depraved indifference cases, I wish that were the case. But curiously, we keep having these Court of Appeals decisions in cases like Prundle and Maldonado and Valencia and Hygen, where this, in fact, is the behavior. And the rejoinder that the New York courts give time and again, even in the majority, is that depraved indifference applies in only the most extreme cases. And in all of those other cases, the court's finding that it doesn't, including in cases where the defendant was sober while driving. If the defendant is not guilty of depravity, while driving sober, it's impossible to see how he could be when severe intoxication is added to the mix. And then, lastly, I will just end on this note. My sister mentioned the evidence of the nightclub, and the import of saying even before he got in the car, there's evidence of depravity. This is exactly the legal analysis that was advanced in Weems, and that the Court of Appeals resoundingly shut down in Valencia. There has to be a concurrent, a temporal concurrence between the extreme reckless behavior and the culpable mental state. And in that regard, this court would focus exclusively on the driving. Thank you. Thank you very much, Your Honors. Thank you so much for your time. But in light of that, perhaps Ms. McCormick is still with us. Why don't you take 30 seconds to respond as best you can. Thank you, Your Honor. I appreciate that, because I should have said that under Harris, the court can still, in the state court, a person can both be procedurally barred and also reach the merits invoking the AEDPA standard. And that under, you know, Your Honor, Judge Bianco, you referred to the de novo standard versus the unreasonable, objectively unreasonable standard under AEDPA. And the fact of the matter is, under this case, it doesn't actually matter, because there is no ineffective assistance of counsel prejudice in this case under any standard that you employ. But this court to this time has not employed a standard of de novo and split the cause and prejudice argument from the separate standalone ineffective assistance of counsel claim, where it would require the AEDPA standard. There's no reason to do so in this case. First, the court has never done so before. And it doesn't need to reach that because it will not survive under any of the any of the standards of review the court uses. Thank you very much. Thank you very much. Thank you both. Excellent arguments. And we are grateful to both of you. And we will reserve decision. I ask the clerk to adjourn court. Court sends adjourn. Thank you. Thank you. Thanks, Maria. Thank you. Thank you.